UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-30003-GAO

DANIELLE ZUCCO,
Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
March 30, 2012

O'TOOLE, D.J.

The plaintiff appeals the denial of her application for Supplemental Security Income ("SSI") benefits. She applied for SSI benefits on June 26, 2007, alleging an inability to work since July 31, 2003 due to depression, Post Traumatic Stress Disorder ("PTSD"), social anxiety disorder, and Obsessive Compulsive Disorder ("OCD"). An Administrative Law Judge ("ALJ") held a hearing on May 20, 2009 and determined that the plaintiff was not disabled. On September 17, 2009, the Decision Review Board ("DRB") remanded the case back to the ALJ for further hearing and consideration of additional evidence. The ALJ held a second hearing on June 10, 2010 and concluded again that the plaintiff was not disabled in a detailed decision. The DRB affirmed the ALJ's decision on November 9, 2010. The plaintiff has exhausted her administrative remedies and her claim for SSI benefits is now ripe for review by this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I. Background

On the date of her application for benefits, the plaintiff was twenty-eight years old. (Administrative Tr. at 284 (hereinafter R.).) She has a high school diploma and has work

experience as a hairdresser, laborer and a sandwich maker. (R. at 336, 340.) She has not engaged in substantial employment activity since June 2007. (Id. at 336.) At her hearing, she testified that she suffers from depression, anxiety, OCD, left foot and right hip pain. (Id. at 35- 42.)

The plaintiff was evaluated in January 2007 and given a Global Assessment of Functioning ("GAF") Score of 55. (Id. at 398.) This score put the plaintiff in a range of moderate symptoms or moderate difficulties in social or occupational functioning. (Def.'s Memo. in Support of Mot. to Affirm at 4.) The plaintiff then began treatment at Valley Psychiatric Service in Springfield, Massachusetts. (Id. at 402.) The therapist there described her as a "fairly engaging 28 [year old] female. (Id. at 411.) And reported that the plaintiff's behavior and cognition were within normal limits, she had adequate impulse control and a logical thought process. (Id. at 410-12.) This therapist assigned the plaintiff a GAF score of 58, still within the range of moderate symptoms. (Id.) The plaintiff was treated at Valley Psychiatric during 2007-2008. (Id. at 601-43.) Her therapists noted that she was calmer and more energized as the year progressed. In the fall, the plaintiff reported that she was cleaning homes, cutting hair and giving manicures and was trying to get her cosmetology license back. (Id. at 633.)

In February 2008, the plaintiff told staff at Valley Psychiatric that she was unstable on her medication and was suicidal. (Id. at 609.) Her therapists report that she was not truthful about her medication and her dealings with her psychiatrist, Dr. Leavitt. (Id. at 604.) She also told the staff she was suicidal and wanted to be admitted to the hospital. (Id. at 609.) Valley Psychiatric staff referred her to the hospital, but she was not admitted because she was evaluated there as not being suicidal. (Id. at 602.)

Another assessment in December 2008 found the plaintiff's was irritable and had impaired memory, but also had intact judgment and insight. (Id. at 699.) The examiner noted that she denied having hallucinations and suicidal thoughts. (Id.) She was assessed at a GAF score of 58. (Id. at 701.)

From January 2009 to May 2010, the plaintiff was treated by Counselor Amanda Fabbro, who observed that she was depressed and anxious, but had an appropriate affect and response to the nature of their discussions. (Id. at 728-797.) The plaintiff told Fabbro that she wanted to continue her recovery, find a job and see more of her son. (Id. at 773.)

In August 2009, the plaintiff began treatment with therapist Ellen Carlino at Valley Psychiatric Service, who noted that the plaintiff was not suicidal and had normal behavior, cognition, and insight. (Id. at 581.) Carlino also noted that the plaintiff was depressed and lacked impulse control. (Id.) Carlino assigned a GAF score of 51. (Id. at 581-82.)

In January 2010, the plaintiff told Fabbro that she wanted to go to nursing school and was looking at Holyoke Community College. (Id. at 743.) She also told Fabbro that she was seeking an attorney to help with her social security appeal "so they can support me while I go through school." (Id. at 743.) During these sessions, Fabbro noted that the plaintiff was actively engaged, alert and generally pleasant. (Id.) She was excited about the possibility of starting an academic program at Holyoke Community College. (Id.) Fabbro saw the plaintiff again in March 2010, where she was observed to be alert, engaged and in a pleasant mood. (Id. at 740.) The plaintiff told Fabbro that she was excited about her goals for the future and that she was continuing to apply for SSDI although she thinks she could handle full time nursing school. (Id.) The plaintiff told Fabbro "it would be so nice not to have to worry about paying the bills every month." (Id.)

The plaintiff was again seen by Carlino on May 25, 2010. (Id. at 556-59.) Carlino completed a Mental Impairment Questionnaire for the plaintiff. (Id.) In this questionnaire, Carlino evaluated the plaintiff and concluded that her daily living and social functioning restrictions ranged from mild to marked. She also observed that the plaintiff had difficulties with concentration, pace and had experienced more than four episodes of decompensation within a twelve month period, each lasting at least two weeks. (Id. at 558.) She explained that this decompensation can be caused by a minimal increase in the mental demands or changes in the plaintiff's life. (Id. at 559.) Carlino also concluded that the plaintiff suffered from an anxiety related disorder and cannot function independently outside the home and would likely miss more than four days of work per month. (Id.) Nonetheless, Carlino assigned a GAF score of 55. (Id. at 556.)

In August 2007, a non-examining state agency psychologist performed a Mental Residual Functional Capacity Assessment of the plaintiff. (Id. at 420-423.) Dr. Jonathan Perlman concluded that the plaintiff could understand and remember instructions, complete simple routine tasks and relating in a socially appropriate manner. (Id. at 422.)

At her administrative hearing on June 10, 2010, the plaintiff testified that she was able to care for herself and her home and could cook, wash clothes, watch television and read. (Id. at 38-9.) She also testified that she suffered from anxiety attacks, which left her unable to get out of bed four or five times per month. (Id. at 43.) She also explained she has memory loss and difficulty concentrating. (Id. at 45.)

A vocational expert testified at the hearing. He explained that the plaintiff could not perform her past relevant work as a hairdresser because it requires standing for most of the day

4

and is considered more than simple or unskilled work. (Id. at 49.) The vocational expert testified that the plaintiff could be employed as a laundry sorter, an inserter or a price marker. (Id. at 49.)

The ALJ concluded that the plaintiff was "not disabled" under Section 1614(a)(3)(A) of the Social Security Act. (Id. at 20.) The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Id. at 14.) She determined that the plaintiff can perform light work as defined by 20 C.F.R. § 416.967(b) including frequently lifting ten pounds, occasionally lifting twenty pounds, no more than two out of eight hours of walking or standing, and sitting six hours in an eight hour day. Further that the evidence of the record and her treating physicians, confirms that the plaintiff has an ability to perform "a wide range of daily activities, including walking on a daily basis in attempts to lose weight, cutting hair for extra money, and planning on attending college in the Fall of 2010 on a full-time basis while disability benefits supported her endeavors, despite her alleged impairments." (Id. at 18.)

## II. Discussion

The ultimate conclusion as to whether the applicant is disabled is the final responsibility of the Commissioner. 20 C.F.R. § 404.1527(e). This Court must uphold Commissioner's decision if it is supported by substantial evidence in the record. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). "If a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion," then substantial evidence to support the decision exists. Rodriguez v. Sec'y of Health & Human Servs., 647 F. 2d 218, 200-23 (1st Cir. 1981). The ALJ is responsible for making determinations of credibility and drawing permissible inferences from evidence. Id.

The plaintiff objects to the conclusions of the ALJ on two grounds. First, she argues that the ALJ erred in failing to give sufficient weight to Carlino's opinion when assessing the plaintiff's Residual Functional Capacity ("RFC"). Second, she contend that the ALJ erred in concluding that the plaintiff did not have marked limitations in the areas of social functioning, concentration, persistence and pace.

The plaintiff argues that the ALJ improperly ignored or downplayed the opinion of Carlino, a social worker, in determining the plaintiff's RFC. In determining a claimant's RFC, the ALJ must assess all relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). This includes the nature and extent of any mental limitations or restrictions. Id. at (c). Sources of medical evidence include licensed physicians, psychologists, optometrists, podiatrists and speech-language pathologists. 20 C.F.R. § 416.913(a). In this case, Carlino is a social worker, which is not listed as an acceptable medical source in the regulations. A licensed clinical social worker is an "other source" under the regulations. Id. at (d). In evaluating such an opinion, an ALJ may consider various factors to determine the credibility and weight of the source's opinion. See Social Security Ruling SSR 06-03p.

The ALJ explained that she considered, but was not persuaded by, Carlino's opinion. Specifically, the ALJ concluded that Carlino's assessment was "inconsistent with the longitudinal history noted above, appears to be based upon the claimant's subjective allegations rather than objective findings and appears to be an accommodation designed to increase the probability of disability." (R. at 18.) The ALJ also noted that Carlino's assessment was inconsistent with the medical evidence provided by the plaintiff's other treatment providers, as well as some of Carlino's own treatment notes. In fact, in August 2009, Carlino assigned the

plaintiff a GAF score of 51, which is not consistent with a total inability to perform work. (Id. at 585.)

Further, the record contains other evidence that supports the ALJ's findings and conclusion. For example, Fabbro treated the plaintiff regularly for more than a year. During this time, Fabbro notes the plaintiff arrived on time for appointments, was neatly attired, actively engaged and generally pleasant. (See Id. at 734, 736, 739, 740, 743, 745, and 746.)

Additionally, the plaintiff's own reports that she was cleaning houses, cutting hair and trying to get her cosmetology license is inconsistent with Carlino's assessment. (See Id. at 633.) The plaintiff discussed her desire to attend community college to pursue nursing on multiple occasions and did not express any reservations about her ability to take on full time schoolwork. (Id. at 740, 742.) Further, the plaintiff discussed her desire for SSDI benefits to facilitate her going back to school full time. (See Id. at 740, 742-43.) Finally, the Annual Clinical Evaluation performed on January 11, 2010 reflects the plaintiff's abilities and treatment progress. (Id. at 731.) The evaluation report that the plaintiff did not report any medical problems aside from migraines and back pain. (Id.) The evaluation also details the plaintiff's progress: she got her own apartment, decorated for the holidays for the first time in seven years, and expressed an interest in working and going back to school. (Id.) The January 2010 assessment by Fabbro also assigned a GAF score of 55, a fairly consistent score to be given for the plaintiff throughout the record. As noted above, even Carlino's more negative overall assessment included a GAF of 51, not very different from Fabbro's.

It is not uncommon for different evaluators to express somewhat different assessments. It is the responsibility of the ALJ to consider the record evidence as a whole, including her own observations made at a hearing at which the applicant has testified, and to decide which evidence

7

is reliable and which is less so. A court may not substitute its own judgment for the ALJ's simply on a different assessment. Rodriguez Pagan, 819 F.2d at 3. If there is substantial evidence in the record to support the ALJ's decision, and therefore the Commissioner's, the decision must be affirmed. Seavey, 276 F.3d at 9. That is the case here.

The plaintiff also argues that the ALJ did not properly consider her limitations in social functioning, concentration, persistence and pace in assessing her RFC. She argues that the ALJ ignored medical evidence that shows her marked limitations in these areas, which would affect the determination of her RFC. However, as support for this argument, the plaintiff offers only the assessment by Carlino in her Mental Impairment Questionnaire. As noted, the ALJ properly weighed this medical evidence in making her decision.

## III. Conclusion

For the foregoing reasons, the Commissioner's decision is affirmed. The plaintiff's Motion (dkt. no. 9) for Judgment on the Pleadings is DENIED. The defendant's Motion (dkt. no. 11) for Order Affirming Decision by Commissioner is GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge